IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*    Case No.    5:14-CR-340 (GTS)

UNITED STATES OF AMERICA

GOVERNMENT'S SENTENCING
MEMORANDUM

v.

NICOLE F. VAISEY,

Defendant.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The United States of America, by and through its counsel of record, the United States Attorney for the Northern District of New York, hereby files its sentencing memorandum requesting, for the reasons set forth below, that the Court impose a Guidelines sentence of 300 years imprisonment and lifetime supervised release.

## INTRODUCTION

On May 14, 2015, defendant Nicole F. Vaisey entered a plea of guilty to Counts 1 – 10 of a 21-count Superseding Indictment charging her with one count of conspiracy to sexually exploit minors in violation of Title 18, United States Code, Sections 2251(a) and (e) (Count 1); and nine counts of sexually exploiting six different minors, in violation of Title 18, United States Code, Section 2251(a) (Counts 2 - 10).

Vaisey is scheduled to be sentenced on December 17, 2015.

## APPLICABLE STATUTORY AND GUIDELINES PROVISIONS

**1.     Statutory Maximum and Minimum Sentences**

The defendant's convictions on Counts 1 - 10 of the Superseding Indictment subject her to a mandatory minimum of 15 years, and a maximum sentence of 30 years imprisonment, per count. 18 U.S.C. § 2251(e); PSR ¶ 218.   In addition, each count of conviction carries with it a mandatory

term of supervised release of at least 5 years, and up to life, 18 U.S.C. § 3583(k), PSR ¶ 222, and a fine of up to $250,000.   18 U.S.C. § 3571; PSR ¶¶  227.[1]

2.    **Guidelines Provisions**

   a.    **Offense Level**

The Government agrees with the Guidelines computations of the Probation Officer, and the resulting Total Offense Level of 43.   PSR ¶¶ 66 – 193.

   b.    **Acceptance of Responsibility**

The Government moves for an additional one-level downward adjustment pursuant to U.S.S.G. § 3E1.1(b) to credit the defendant for having "timely notified authorities of his intention to enter a plea of guilty, thereby permitting the U.S. Attorney's Office to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently."   PSR ¶ 189.

   c.    **Criminal History Category**

According to the presentence report, the defendant's criminal history category is I.   PSR ¶ 197.   The Government agrees with the Probation Officer's determination of the defendant's criminal history category.

   d.    **Guidelines Range and Sentence**

As described above, the defendant's total offense level is 43 and her criminal history category is I.   As a result, the Sentencing Guidelines advise that the defendant receive a sentence of life.   PSR ¶ 219.   However, since no count of conviction carries a potential life sentence, U.S.S.G. § 5G1.2(d) provides that the sentences imposed on each count of conviction shall run consecutively "to the extent necessary to produce a combined sentence equal to the total

_____

[1]      The Government agrees with the assessment of the Probation Officer that the defendant does not have the ability to pay a fine.   PSR ¶¶ 216 - 17.

punishment." Here, the total punishment available to the defendant is 300 years, representing consecutive maximum sentences on each count of conviction. PSR ¶¶ 219 - 20; s*ee United States v. Ketcham*, 507 Fed. App'x. 42, 44 (2d Cir. 2013); *United States v. Petrie*, 542 Fed. App'x. 746, 747-48 (2d Cir. 2013). The Guidelines term of supervised release for each count of conviction is no less than 5 years and up to life, PSR ¶ 224, and the Guidelines recommend lifetime supervision. *Id.*; U.S.S.G. § 5D1.2(b)(2).

The Government maintains that a Guidelines sentence in this case is fair, just, and warranted.

**3.      Forfeiture**

As set forth in the Forfeiture Allegation of the Superseding Indictment, the defendant shall forfeit to the United States all of her right, title and interest of any nature in any and all assets that are subject to forfeiture, pursuant to 18 U.S.C. § 2253. That forfeiture includes the following:

1)      A 2004 red Pontiac, Sunfire, NY registration GCR6443;
2)      A 2001 white Honda, Civic, NY registration BVZ9284;
3)      An Antec homemade desktop computer with no serial number, containing five
hard drives:
        a)      one 500GB Seagate hard drive, S/N 5QM11ZRR;
        b)      one 1.0 TB Western Digital hard drive, S/N WMATV8440832;
        c)      one 500GB Western Digital hard drive, S/N WCAPW2257346;
        d)      one 300GB Seagate hard drive, S/N 5NF133W0; and
        e)      one 3000GB Seagate hard drive, S/N W1F23A2C;
4)      A Canon G7 Digital camera S/N #3221205452;
5)      An iPhone model #A1349, EMC#2422, FCC ID: BCG-E2422B; and
6)      An iPhone model #A1387, IC# 579C-E2430A, FCC ID: BCG-E2430A.

**4.      Restitution**

There has been no request for restitution from the victims named in Counts 1 – 10 of the Superseding Indictment.

3

## GOVERNMENT'S SENTENCING RECOMMENDATION[2]

For all of the reasons set forth herein, the Government maintains that a Guidelines sentence of 300 years imprisonment and lifetime supervised release is fair, just, warranted, and not greater than necessary to comply with the purposes of sentencing.   18 U.S.C. § 3553(a).   The record reveals no mitigating factor that would suggest that anything but a Guidelines sentence is appropriate.   Moreover, such a sentence is reasonably designed to achieve the total punishment, and takes into account the nature and seriousness of the defendant's crimes, the harm done to the child victims, and each of the relevant considerations required under 18 U.S.C. § 3553(a).

### 18 U.S.C. § 3553(a)(1)

The first factor to be considered under § 3553(a) is the "nature and circumstances of the offense and the history and characteristics of the defendant."   18 U.S.C. § 3553(a)(1).   Here, the nature and circumstances of the offense and the history and characteristics of the defendant are intertwined with the defendant's relationship with co-defendant, and co-conspirator, Stephen M. Howells, II.

Vaisey met Howells through the social networking site "Fetlife."   PSR ¶ 54.   They then took their on-line relationship personal and began a voluntary "dominant/submissive," sexual

---

[2]   The Government reserves the right to respond to defense arguments.   Similarly, if the Court is considering a *sua sponte* departure from the applicable sentencing guidelines range on a ground not previously identified by the parties or in the Presentence Investigation Report, the parties are entitled to notice and an opportunity to respond.   *See* Fed R. Crim. P. 32(i)(1)(c), 32 (h).

Further, the United States respectfully requests that the Court provide the parties with any *ex parte* communications received by the Court in connection with sentencing, with the exception of the confidential sentencing recommendations submitted by the United States Probation Office.

relationship that they sometimes referred to as a "master/slave" relationship, with Howells as the "master," and Vaisey as the "slave."   *Id.*   Pursuant to a "Service Agreement" signed by Vaisey, she agreed "of [her] own free will" to grant to Howells "full ownership and use of [her] body, spirit and mind."   PSR ¶ 55.   Vaisey actively sought out this type of relationship, and often bragged to others about her bruises and bite marks.   PSR ¶ 62.

While there is little doubt that it was her relationship with Steven Howells that led to the defendant's abuse of children, the evidence is clear (despite her current statements to the contrary) that it was not Howells who first encouraged her to sexually exploit the vulnerable. In July and early August of 2013, while working at a residential location serving disabled adults, Vaisey videotaped herself sexually abusing a mentally and physically disabled woman who was entrusted to her care.   PSR ¶ 51.   She also surreptitiously videotaped other disabled women in her care as they bathed.   *Id.*   While Vaisey now maintains that she did this as part of a "task" given to her by Howells, PSR ¶ 65, the text messages between them belie that claim.   On July 11, 2013, after having sexually abused a disabled resident, Vaisey texted Howells, and the two engaged in the following correspondence:

Vaisey:         I did something bad Master…

Howells:      Else, in addition to speeding?

Vaisey:         Not bad that I'll be punished by you for Master. Bad that if anyone knew I would
                lose my job…

Howells:      Oh?

Vaisey:         The girl at work that can't talk or walk or anything was miserable and sad and
                mopey. I made her cum when I put her to bed. She was happy and smiley and
                laughing when I closed her door Mater (sic)

Howells:      Interesting.

Howells:        Hehe

Vaisey:         It took me am (sic) hour to give her her meds. That never happens. She was driving me nuts. Telling and sighing. I couldn't take it anymore Master

Vaisey:         Yelling*

Vaisey:         That doesn't make it less bad of me Master

Howells:        Yup sounded frustrated

Howells:        Perspective, feel guilty?

Vaisey:         It's complicated. She enjoyed it so no. Technically he (sic) couldn't tell me to stop if she wanted to so abuse. I'm conflicted Master

Howells:        Don't feel bad, that's an order.

Vaisey:         Yes Master

Howells:        Good girl

*Id.*

In her own words, the defendant sexually abused the disabled woman because the resident was "sad and mopey" and would not take her meds. Nothing in the correspondence even implies that Howells had "tasked" her to abuse the resident.   Instead, it is readily apparent that Vaisey's current explanation of the motive behind her exploitation of the disabled adults is as untrue as her explanation of the motive behind her exploitation of the children she and Howells later abused.   See PSR ¶ 64.

It was *after* the abuse and exploitation of the disabled adults that Howells and Vaisey recorded the video that the defendant now claims to be the reason she acquiesced in the sexual abuse of the child victims.   While the defendant claims that the best way to "understand" her relationship with Howells is to view this video, recorded on or about August 6, 2013, there is nothing in or about the video itself that explains Vaisey's earlier abuse of her adult victims, or

why she engaged with Howells in the abuse of V-3 a month later, on September 7, 2013 - or again on October 20, 2013, and November 16, 2013, or in the abuse of V-6 on November 17, 2013 and December 15, 2013, or the abuse of V-3 on December 29, 2013, April 18, 2014, and May 31, 2014, or the kidnapping and abuse of V-1 on August 13, 2014.

The video, which is available for the Court's inspection upon request, is actually a rather mild rendition of the many recovered sexually explicit videos depicting the "BDSM" relationship between Howells and Vaisey.   Further, nothing depicted in the video is claimed to be the reason for Vaisey's year-long participation in the abuse of children.   While the defendant claims that activities that are *not* depicted in the video led to an apparently perpetual inability to say "no" to Howells, Vaisey's own statements prove that to be false.   She often told him no.   PSR ¶ 64.

The first recorded abuse of V-3 is September 7, 2013, a month after the events in which the defendant claims Howells stole from her the ability to say no.   Yet, in her own words, when Howells approached her about involving V-3 in their sex life, Vaisey "said no at first, but eventually gave in after he brought it back up several times and would punish her."   *Id.*   In fact, she recounts that in 2014 "she started putting her foot down" about the abuse of V-3 (she does not mention that she ever even attempted to object to the abuse of V-5 or V-6, which also happened while she and Howells were together), and that talk of kidnapping girls for sex began after Howells "realized [Vaisey] was serious about ending the abuse of V-3."   *Id.*; *see also* PSR ¶¶ 59, 60.   More compellingly, she admits that "[s]he thought about leaving him, but then things would get better."   PSR ¶ 64.

Recovered text messages between the couple show Vaisey's willing participation in their crimes, including the plan *she devised* to gain access to V-3 and drug her.   PSR ¶ 57; *see also* PSR ¶¶ 56-60.

Perhaps the most compelling evidence that Vaisey was in no way coerced into her participation in the crimes against the children are the videotapes themselves – not only those in which she is a willing participant, but even more so, those where she does not participate at all. There is not one depiction in all of the evidence relating to the abuse of these children that supports a theory that Vaisey was acting under any type of fear, coercion or duress.   There is no weapon.   Howells never orders Vaisey to do anything.   He never raises his voice to her, or to the children.   There is virtually no conversation in any of the abuse videos.   Vaisey never appears frightened or hesitant.   In some of the videos she appears to be asleep.   In others, she plays on her phone or uses her laptop while Howells abuses a child in the bed next to her.   In those where she participates in the abuse, she always appears as a willing participant.

To be provided under seal as Government Exhibit A is a compact disk containing a small sampling of the video files depicting Vaisey during the abuse of children,[3] including the November 16th abuse of V-5, where Vaisey is depicted on her laptop while Howells abuses the child next to her in the bed.   Forensic examination of the laptop seen in the video confirms that at the time Howells was abusing V-5 in the bed next to her, Vaisey was surfing the Internet, accessing Facebook, Yahoo! weather, and the trivia game site Sporcle.com.   PSR ¶ 48.

A thorough reading of Vaisey's explanations for her year-long participation in the sexual abuse and ultimate kidnapping of children shows that Howells was a motive, but only in the sense that she craved his affection.   She admits that "she started having issues with him when he stopped being affectionate with her and she no longer mattered to him," that when she did not want to drive him around to look for a young girl to kidnap, he would "get mad and threaten to paddle her," or *"[e]ven worse, he would ignore her, which was even harder for her to handle*."

---

[3]      Of course, *all* of the video evidence is available for the Court's review upon request.

PSR ¶ 64 (emphasis added).   In fact, she sent a text message to Howells during the period of time they were "shopping" for kidnapping victims, telling him, "I have to tell you that I don't think you understand how shitty it feels to drive you around all day so you can look for someone to bring home that you want more than me."   PSR ¶ 60.   She complained that "she had played her 'part' a lot longer than he had played his because he was ignoring her rather than punishing and rewarding her."   PSR ¶ 55.   But this statement of Vaisey's sums it up best:   "She emphasizes that children were not [her] thing, but what made him happy made her happy."   *Id.*

Nicole Vaisey may have committed her crimes out of fear – but it was not a fear of physical abuse – it was out of fear of losing Howells.

Whatever twisted rationale the defendant wants to attribute to her sacrifice of V-3 to Howells as a sex object, or to her participation in the abuse of V-3, V-6, and V-1, or to her participation in the kidnapping of the Amish girls, it does not lessen her responsibility for her crimes.   Her current statement that if she left Howells "no one would be there to protect the children from him" is laughable.   Apparently the defendant's idea of protecting children is to participate in their abuse – not to report it to authorities.   She had plenty of opportunities to do just that. Over the course of the entire 11 months where she conspired with Howells and participated with him in the sexual exploitation of children, Vaisey had nearly daily opportunities to escape – and to report his crimes.   She had a car.   She had a phone.   She had a computer with Internet access – and social networking accounts.   She had family close by.   She had a job.   She had friends.   Yet Vaisey never left, never disclosed the abuse, never called the authorities.   That is because she was a willing participant.   She left two kidnapped children alone with Howells and drove her car to her sister's house where she visited with her sister, ate, and made up a lie as to why Howells was not there.   A lie she perpetuated during the entire time

they held the children.   She did not confide in her sister, or call the police.   Instead, she went back home and filmed the abuse of the older Amish girl.   PSR ¶¶ 39 – 40.   It was only the realization that the room meant to indefinitely imprison the Amish girls was not soundproof that their captivity was cut to only 25 hours.   PSR ¶ 64.

As one of the people closest to the defendant tells this Court, Vaisey "is a well-educated, strong woman who was not easily controlled by others and did not allow Howells to control her unless she wanted him to." She "is equally responsible for what the couple did together for their own sexual gratification."   PSR ¶ 62.

While Vaisey is being afforded credit for acceptance of responsibility for her guilty pleas to the crimes she committed, her constant excuses do not truly amount to acceptance.   There is no recognition of her own personal responsibility, or of the horrors she helped to inflict. Instead, Vaisey has devolved into a blame-game where she lays everything she did at the feet of Stephen Howells.   That is not true remorse, nor is it the truth.

There is simply nothing about Vaisey that mitigates her crimes.   As aptly put by the mother of V-3, "for justice to be served, Howells and Vaisey need to be treated equally at sentencing."   PSR ¶ 62.   There is no meaningful distinction to be drawn as to why one deserves a life sentence and the other does not.   Vaisey was an active and willing participant. Her motive is irrelevant.   It is certainly no comfort to her victims that Vaisey participated in the crimes against them in an effort to make Howells happy, or in an effort to not lose her boyfriend. That thought process, and her current efforts to distance herself from responsibility for her actions, make it clear that Vaisey is dangerous, and an offender for whom the Guidelines range and recommended sentence of 300 years is not only appropriate but necessary.   The protection of the vulnerable members of our society demands it.

**18 U.S.C. § 3553(a)(2)**

The next set of factors to be considered in imposing sentence include:

the need for the sentence imposed--(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;(B) to afford adequate deterrence to criminal conduct;(C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Certainly the recommended sentence achieves all of the relevant objectives.[4]   Few offenses are more serious, and the recommended sentence acknowledges that, while at the same time affording adequate deterrence to others.   To impose a lesser sentence here, in a case with so many aggravating factors, provides little deterrence to those whose serious crimes do not include drugging, kidnapping, and the exploitation of multiple victims.

Given the nature and extent of the defendant's crimes, the number of victims, the act of kidnapping to obtain additional victims, and the dangerous drugging of children to facilitate their sexual exploitation, a 300 year sentence will justly ensure public safety by forever removing Vaisey's access to children.

**18 U.S.C. § 3553(a)(3), (4) and (5)**

Next, the Court must consider, in pertinent part:

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for--
(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—[and]

---

[4]       The defendant does not appear to be in need of educational or vocational training, or medical care.

                              *         *         *

      (5) any pertinent policy statement--
      (A) issued by the Sentencing Commission…

18 U.S.C. §3553(a)(3)-(5).

      Here, the only kind of sentence available is incarceration, and the sentencing range as established by the Guidelines is 300 years.   PSR ¶ 219.   It is also noteworthy that the Guidelines offense levels go only as high as 43, while Vaisey scores 55 – **twelve levels higher**. PSR ¶¶ 66 - 193.   Moreover, the policy statement issued by the Sentencing Commission at U.S.S.G. § 5K2.0(b) advises against a departure from the Guidelines in child crimes and sexual offenses except in explicitly numerated circumstances, none of which, the Government submits, are present here.

      <u>**18 U.S.C. § 3553(a)(6)**</u>

      Finally, adherence to a Guidelines sentence is the best way to ensure against sentencing disparity "among defendants with similar records who have been found guilty of similar conduct."   18 U.S.C. § 3553(a)(6).   The fact that the defendant is a woman, or that her motive in committing the offenses was to please her boyfriend, or that she did not abuse as many children as Howells, does not change the fact that the crimes she committed here are some of the most severe offenses that have come before this Court.   To sentence her to a term that does not ensure she spends the rest of her life behind bars would result in sure disparity with others who abuse children and produce images of that abuse – but who did not also have multiple victims, or who did not drug and kidnap their victims, or who did not also exploit vulnerable adults in their care and film that abuse.

### CONCLUSION

      For all of the reasons set forth above, the Government maintains that consecutive

sentences totaling the maximum available sentence of 300 years, designed to ensure that the defendant spends the rest of her life in prison, is the outcome warranted by her crimes.   Such a sentence is not greater than necessary, and is sufficient to comply with and accomplish the many goals of sentencing.    18 U.S.C. § 3553(a).

Respectfully submitted this 30th day of November, 2015,

RICHARD S. HARTUNIAN
United States Attorney


By:  /s/   *Lisa M. Fletcher*      
Lisa M. Fletcher
Assistant United States Attorney
Bar Roll No. 510187

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

*******************************

UNITED STATES OF AMERICA

                                           Case No.: 5:14-CR-340 (GTS)

           v.

NICOLE F. VAISEY

                   Defendant.

*******************************

**CERTIFICATE OF SERVICE**

I hereby certify that on November 30, 2015 I filed the **Government's Sentencing Memorandum** with the Clerk of the District Court and sent copies of said documents via ECF to the following:

Bradford Riendeau, Esq.

/s/

Paula Briggs

**14**